No. 12464

IN THE SUPREME COURT OF THE STATE OF MONTANA

1973

---

MARJORIE OPIE,

Plaintiff and Respondent, and
Cross Appellant,

-vs-

MONTANA PHYSICIANS' SERVICE,
a corporation,

Defendant and Appellant, and
Cross Respondent.

---

Appeal from: District Court of the Thirteenth Judicial District,
Honorable Charles Luedke, Judge presiding.

Counsel of Record:

For Appellant:

Hughes, Bennett and Cain, Helena, Montana
Alan F. Cain argued, Helena, Montana

For Respondent:

Michael J. Whalen argued, Billings, Montana

---

Submitted: November 29, 1973

Decided: JAN 4 1974

Filed: JAN 4 1974

*Thomas Jr. Kearney*
Clerk

Mr. Justice Frank I. Haswell delivered the Opinion of the Court.

This is an action by a member's wife against a group health organization seeking to recover medical and dental benefits. The district court of Yellowstone County, the Hon. Charles Luedke, district judge, sitting without a jury, awarded judgment to plaintiff for medical services in the amount of $805.65 and denied recovery for the dental services. Defendant health organization appeals from the award to plaintiff for the medical services, and plaintiff cross-appeals from the denial of her claim in full for medical services and her entire claim for dental services.

Plaintiff and cross-appellant is Marjorie Opie, the wife of a State Highway Department employee covered under a Blue Shield group health agreement. Defendant and appellant is Montana Physicians' Service, a licensed health organization issuing Blue Shield agreements providing reimbursement for designated medical services.

Plaintiff's complaint contained two counts. Count 1 sought recovery of medical-hospital benefits in the amount of $825.65 relating to a hysterectomy performed on plaintiff by Dr. H. C. Kayser III at St. Vincent's Hospital in Billings, Montana. Count 2 sought recovery of $825.50 relating to expenses incurred by plaintiff in the removal of all her teeth and their replacement with dentures.

Following trial before the court without a jury, Judge Luedke awarded judgment to plaintiff in the amount of $805.65 on the first count and denied plaintiff any recovery on the second count. The judge attached a six page memorandum explaining the basis of the judgment in lieu of formal findings of fact and conclusions of law. The gist of the memorandum was: Count 1 - the evidence supported the conclusion that the hysterectomy was

- 2 -

not primarily performed as a sterilization procedure, accordingly did not fall within this exclusion in the agreement, and the medical and hospital expenses therefor were collectible by plaintiff; Count 2 - plaintiff failed to prove by a preponderance of the evidence that the extraction of her teeth and replacement with dentures occurred as the result of a cyst caused by a fall thereby removing such services from an exclusion in the agreement for "services customarily performed by dentists or oral surgeons or services incident thereto."

The underlying issue in this case is the sufficiency of the evidence to support the judgment when considered in the framework of the provisions of the Blue Shield agreement.

Initially we direct our attention to Count 1. The Blue Shield agreement provides for the payment of specified medical, surgical and hospital services furnished a group member or his family. The exclusion pertinent to Count 1 is contained in Article 8(c), reading in pertinent part:

> "Services in connection with * * * sterilization operations and services connected therewith and surgery of any nature not necessary for diagnosis or for treatment of active illness or injury * * *."

The memorandum of the district court reviewed the evidence in considerable detail. A recital of all this evidence is unnecessary. We will summarize it by saying that the district court found that plaintiff's difficulties with female problems for a three year period following the birth of her third child-- vaginal bleeding and discharges, the use of birth control pills and their side effects, irregularities in her menstrual periods and menstrual bleeding, pains in her groin area, sore breasts, psychiatric problems, the possibility of a developing tumor, the possibility of future difficulties in later life, and related problems--amounted to an active illness which the hysterectomy

- 3 -

sought to alleviate. The district court's finding can be pinpointed in the following paragraph from its memorandum:

"It is apparent that the combination of post-partum complications and the deformity of that child upon birth prompted a ready fear of further pregnancy until her physical condition returned to normal. To serve this fear, she used birth control pills. They reacted upon her in such a way as to cause symptoms which, in her mind, amounted to a continuation of postpartum problems. Thus, a vicious circle resulted. Her fears compelled the taking of pills, the pills in turn caused symptoms which further fed her fears and in time she ended up in the psychiatric ward. It was the doctor's judgment that removal of the uterus was indicated under the circumstances because it would not only solve the present problems but would alleviate the possibility of there being an organic cause for her symptoms and also avoid possible complications later in plaintiff's life. Sterilization would be a necessary consequence, but not its purpose - which under the circumstances was to treat an active illness of plaintiff."

The district court concluded:

" * * * that the operation performed was not such as to properly fall within the meaning of the exclusion asserted by defendant and plaintiff is entitled to judgment on her claim under Count 1."

We agree. There is substantial credible evidence supporting the district court's finding that the hysterectomy was not performed as a sterilization operation but on the contrary to treat an active illness, eliminate a possible organic cause for plaintiff's symptoms, and avoid possible later complications. Dr. Kayser testified by deposition as follows:

"Q. And although this operation necessarily resulted in this woman becoming sterile, it was not carried out for the purpose of sterilization, is that correct, that was not the primary-- A. I did not do it primarily for sterilization."

A letter from Dr. Kayser to defendant which is attached to and forms a part of his deposition states in pertinent part:

"It was felt that because of the oligomenorrhea and hypomenorrhea that difficulties in the future could develop and a hysterectomy was suggested to the patient. This was the primary reason for

- 4 -

doing the hysterectomy with, certainly, sterility
being a factor in consideration of removing the
uterus, but not a primary reason for the surgery
itself."

Dr. Kayser further testified that if plaintiff had been interested

in sterilization as such and had no other problems, he would

simply have carried out a procedure known as a tubal ligation.

The reduction of recovery on the first count to $805.65

was not argued nor does the reason therefor appear in the district

court file. The correct amount based on the materials before us

is $805.65 and such amount is affirmed.

Passing to the second count, plaintiff alleged that she

was required to expend $825.50 as a result of surgery not a

customary service ordinarily performed by dentists or oral sur-

geons, but instead surgery required to remove a cyst. The dis-

trict court denied plaintiff's claim for failure of proof.

The district court's memorandum sets forth its rationale:

"It appears that as a result of a fall, plain-
tiff's front teeth were damaged resulting in an
infection or growth in her front upper gum above
the teeth. In time a cyst was formed which
ultimately began draining causing a tonsilitis
condition in her throat and, in her view, also
causing the gums to recede from the teeth. A
medical doctor treated her with penicillin for
a time and there being no correction of the con-
dition insisted that she consult with a dentist.
She went to an oral surgeon who hospitalized
her, removed all teeth, removed the cyst and she
was fitted with healing dentures and finally
permanent dentures.

"The policy exclusion reads:

"'Services customarily performed by dentists or
oral surgeons or services incident thereto.'

"It is plaintiff's view that the cyst which
developed in the gum above her front teeth as a
result of her fall was the sole and only cause
of the services performed by the oral surgeon, i.e.,
that the necessity for extraction of all her teeth
stemmed from the discharge from the cyst and that
the cyst removal was also necessary to cure a
persistent tonsilitis condition. On this basis,
she asserts that this service was not one customar-
ily performed by dentists or oral surgeons even
though teeth extraction occurred as an incident

- 5 -

thereto.

"There is no medical testimony of any moment on either side of this cause.

"The evidence on this count does not preponderate in favor of plaintiff and the defendant is entitled to judgment of dismissal thereof."

Plaintiff's position on appeal under Count 2 can be summarized in this manner: (1) that the benefits are payable under Article 8(d) of the Basic Agreement, under Section B(d) of the Supplementary Benefits Endorsement, or under Section C(3) of the Major Medical Expense Endorsement, and (2) that plaintiff's own testimony was sufficient to meet her burden of proof and entitle her to benefits under any of the three provisions of the agreement.

Plaintiff's claim of benefits under Count 2 is based on the following provisions:

(1) BASIC AGREEMENT.

"Article 8 - Exclusions From Any Benefits Under This Agreement.

"The following conditions, services, treatments and procedures are wholly EXCLUDED * * *:

"(D). Services customarily performed by dentists or oral surgeons or services incident thereto."

(2) Supplementary Benefits Endorsement.

"Section B - Benefits: MPS hereby agrees to reimburse the Beneficiary Member * * * for usual, customary, and reasonable charges incurred for services herein specified when the same are necessary and rendered in connection with treatment of a member for bodily injuries effected through accidental means * * * and such treatment is rendered * * * at the direction of a licensed doctor of medicine:

"(D). Oral surgery and dental examinations performed by doctors of dental surgery and ordered by a licensed doctor of medicine."

(3) Major Medical Expense Endorsement.

"Section C - Exclusions and Limitations.

"No benefits shall be provided under this

- 6 -

endorsement for:

\* \* \*

"3. Dental care and treatments, dental surgery and dental appliances unless such charges are made necessary by accidental bodily injury occurring while the member is covered hereunder; except that the following shall not be excluded--

"Excision of tumors and cysts of the jaws, cheeks, lips, tongue, roof and floor of the mouth, when such conditions require a pathological examination."

It is apparent that plaintiff's claim to benefits under any of the above provisions is dependent on establishing a causal connection between the cyst and the dental services performed. In short whether removal of the cyst necessitated extraction of all of plaintiff's teeth and the other services performed by the oral surgeon. Plaintiff's proof falls short of the required burden in this particular.

This is peculiarly a subject of expert medical or dental judgment. Here it would have been a simple matter to have called the oral surgeon as a witness at the trial or by deposition and to have established that the total extraction of plaintiff's teeth was required in connection with the cyst removal if such were the fact. Instead plaintiff relied on her own testimony on a subject in which she was not versed. If weaker and less satisfactory evidence is offered, when it appears that stronger and more satisfactory evidence was within the power of a party to produce, the evidence offered should be viewed with distrust. Section 93-2001-1(7), R.C.M. 1947. As the district court in a nonjury case is trier of the facts and determines the credibility of the witnesses and the weight to be given their testimony, it was within the district court's power to discount or reject entirely plaintiff's testimony on causal connection between the cyst removal, removal of all her teeth and related services of

- 7 -

the oral surgeon, and the necessity therefor.  Such being the case, plaintiff failed to meet her burden of proof by a preponderance of the evidence on count 2.

The judgment of the district court is affirmed.  Plaintiff's motion for assessment of damages against defendant for a frivolous appeal is denied for the reason that the appeal here is not so devoid of merit as to render it frivolous.

_____
Justice

We concur :

_____
Chief Justice

_____

_____
Justices